UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Dale Peterson, d/b/a The Juice Bar;
Brooke Wise; and Kenneth E. Yates,
individually doing business as
Sweetcheeks, Inc., and doing business as
Sweetcheeks, Inc., a Minnesota Corporation
to be formed,

                  Plaintiffs,

v.

The City of Cosmos, Minnesota,

                  Defendant.

Civil No. 03-6570 (DWF/SRN)

**MEMORANDUM
OPINION AND ORDER**

_____

Randall D. B. Tigue, Esq., Tigue Law Office, counsel for Plaintiffs.

James J. Thomson, Esq., and Mary D. Tietjen, Esq., Kennedy & Graven, counsel for Defendant.

_____

**Introduction**

The above-entitled matter came before the undersigned United States District Judge on April 22, 2005, pursuant to a Motion for Summary Judgment brought by the City of Cosmos (the "City"). In their Second Amended and Supplemental Complaint, Plaintiffs Dale Peterson, doing business as the Juice Bar, and Brooke Wise and Kenneth E. Yates, individually and doing business as Sweetcheeks, Inc., (collectively, "Plaintiffs") assert that: (1) the City's Ordinance No. 96, as amended by Ordinance No. 97, is not narrowly tailored to serve a substantial government interest and thus violates the First and Fourteenth Amendments of the United States Constitution; (2) Ordinance No. 96 fails to assure a

prompt judicial decision in the event of a license denial; (3) the disqualification provisions of Ordinance No. 96 are an impermissible prior restraint that violate the First Amendment; (4) the restrictions on hours of operation violate the First Amendment; and (5) the other behavioral restrictions of the ordinances violate the First Amendment. In addition, Plaintiffs contend that the disqualification provisions of Ordinance No. 96 violate Minnesota Statute § 364. For the reasons stated below, the City's Motion for Summary Judgment is granted in part and denied in part.

**Background**

Plaintiff Dale Peterson is the sole proprietor of an adult entertainment establishment known as "the Juice Bar" located in the City of Cosmos, Minnesota. Prior to January 1, 2004, the Juice Bar featured live nude and semi-nude entertainment. The establishment did not hold a liquor license. The City of Cosmos (the "City") is a municipal corporation organized under the laws of the State of Minnesota.

On October 9, 2003, the Cosmos City Council enacted Ordinance No. 96, governing the operation of adult-oriented businesses. Ordinance No. 96 amended the City's previous Ordinance No. 91, adopted December 31, 2001, related to adult-oriented businesses and their licensure. Ordinance No. 96 established additional regulations related to adult-oriented businesses and their licensing requirements. The Juice Bar establishment is undisputedly governed by the provisions of Ordinance No. 96.

In enacting the ordinance, the City set out the following purpose and intent:

> **Subdivision 1.**  Findings of the City Council.  Studies conducted by the Minnesota Attorney General, the American Planning Association and cities such as St. Paul, Minnesota; Indianapolis, Indiana; Alexandria, Minnesota; Rochester, Minnesota;

Phoenix, Arizona; Los Angeles, California; and Seattle Washington have studied the impacts that adult oriented businesses have in those communities. These studies have concluded that adult oriented businesses have adverse impact on the surrounding neighborhoods. Those impacts include increased crime rates, lower property values, increased transiency, neighborhood blight and potential health risks. The City Council of the City of Cosmos makes the following findings regarding the need to license adult oriented businesses. The findings are based upon the experiences of other cities where such businesses have located, as studied by City staff.

> (a) Adult oriented businesses adverse secondary impacts of the types set forth above.
>
> (b) The adverse impacts caused by adult oriented businesses tend to diminish if adult oriented businesses are governed by locational requirements, licensing requirements and health requirements.
>
> (c) It is not the intent of the city council to prohibit adult oriented businesses from having a reasonable opportunity to locate in the city.
>
> (d) Minnesota Statues [sic], Section 462.357, allows the city to adopt regulations to promote the public health, safety, morals and general welfare.
>
> (e) The public health, safety, morals and general welfare will be promoted by the city adopting regulations governing adult oriented businesses.
>
> (f) Adult oriented businesses can contribute to an increase in criminal activity in the area in which such businesses are located, taxing city crime-prevention programs and law enforcement services.
>
> (g) Adult oriented businesses can be used as fronts for prostitution and other criminal activity. The experience of other cities indicates that the proper management and operation of such businesses can, however, minimize this risk, provided the owner and operators of such facilities are regulated by licensing or other procedures.
>
> (h) Adult oriented businesses can increase the risk of exposure to communicable diseases including but not limited to Acquired Immune Deficiency Syndrome (AIDS) for which currently there is no cure. Experiences of other cities indicate that such businesses can facilitate the spread of communicable diseases by virtue of the design and use of

    the premises, thereby endangering not only the patrons of such establishments but also the general public.

 (i) Adult oriented businesses can cause or contribute to public health problems by the presence of live adult entertainment in conjunction with food and/or drink on the same premises.

 (j) The risk of criminal activity and/or public health problems can be minimized through a licensing and regulatory scheme as provided herein.

 **Subdivision 2. Purpose.** It is the purpose of this Ordinance to regulate Adult Oriented Businesses to promote the health, safety, morals, and general welfare of the citizens of the City and to establish reasonable and uniform regulations to:

 (a) Prevent additional criminal activity within the City;

 (b) Prevent deterioration of neighborhoods and its consequent adverse effect on real estate values of properties within the neighborhood;

 (c) To locate Adult Oriented Business away from residential areas, schools, churches, parks and playgrounds;

 (d) Prevent concentration of Adult Oriented Businesses within certain areas of the City.

 **Subdivision 3.** The provisions of this Ordinance have neither the purpose nor effect of imposing a limitation or restriction on the content of any communicative materials, including Adult oriented materials. Similarly, it is not the intent nor effect of this Ordinance to restrict or deny access by adults to Adult oriented materials protected by the First Amendment or to deny access by distributors and exhibitors of Adult oriented entertainment to their intended market.

(Plaintiffs' Second Amended and Supplemental Complaint, Ex. A (emphasis in original).)

Under Section 5 of Ordinance No. 96, no adult-oriented business may be open to the public between the hours of 10:00 p.m. and 10:00 a.m. In addition, Section 6, subdivision 7, of Ordinance

No. 96 establishes certain conditions that apply to adult cabarets such as the Juice Bar. Specifically, this subdivision provides as follows:

> <u>Additional Conditions for Adult Cabarets.</u> The following conditions apply to adult cabarets:
>
> a) No dancer, live entertainer or performer shall be under 18 years of age.
>
> b) All dancing or live entertainment shall occur on a platform intended for that purpose and which is raised at least two feet from the level of the floor.
>
> c) No dancer or performer shall perform any dance or live entertainment closer than 10 feet measured in a direct line to a patron.
>
> d) No dancer or performer shall fondle or caress any patron and no patron shall fondle or caress any dancer or performer.
>
> e) No patron shall pay or give any gratuity to any dancer or performer.
>
> f) No dancer shall solicit, receive or accept any pay or gratuity from any patron.

(Emphasis in original.)

Section 7 of Ordinance No. 96 prohibits the operation of an "adult-oriented business" unless a business is licensed under Ordinance No. 96. Section 8, subdivision 5(b), establishes certain disqualifications from such licensure. In pertinent part, Section 8, subdivision 5(b), states:

> <u>Disqualifications</u>. The City will issue a license to an applicant within 30 days of the application unless one or more of the following conditions exist:
>
> . . .
>
> (d) The applicant has been convicted of a gross misdemeanor or felony or of violating any law of this state or local ordinance relating to sex offenses, obscenity offenses, or adult oriented businesses;
>
> . . .

5

(Emphasis in original.)

Section 10 of Ordinance No. 96 addresses the procedure by which one applies for a license. Specifically, Ordinance No. 96 states that the City Council has 30 days to review and verify the information in the license application, perform criminal background checks, and conduct any investigation to assure compliance with Ordinance No. 96. (*See* Ordinance No. 96 § 10, subd. 1.) If the City Council fails to issue a license within 30 days, the application is deemed approved. (*Id*. at subd. 3.) Ordinance No. 96 also establishes a license fee and an investigation fee. (*See* Ordinance No. 96 § 11.) On November 13, 2003, the City set the license fee at $3,500. The City previously had set the investigation fee at $500.

On October 14, 2003, Peterson pleaded guilty in Meeker County District Court to a charge of promoting prostitution related to activities that had taken place at the Juice Bar. As part of his plea negotiation and sentence for the criminal charge, Peterson was ordered to divest himself of all interest in the Juice Bar by January 28, 2004.

In a letter dated November 25, 2003, Kathy Blackwell, Clerk/Treasurer of the City of Cosmos, notified Peterson that he was required to obtain an Adult-Oriented Business License for the Juice Bar pursuant to the provisions of Ordinance No. 96. Plaintiffs contend, and the City does not dispute, that as a result of the City's licensure disqualification provisions in section 8, subdivision 5, of Ordinance No. 96, Peterson is not qualified to obtain a license. Thus, instead of applying for a license, Peterson closed the Juice Bar on January 1, 2004.[1]

---

[1] At the oral argument for Plaintiffs' Motion for Preliminary Injunction and Temporary
(continued...)

Initially, Plaintiffs asserted that Brooke Wise and Kenneth Yates were interested in purchasing the Juice Bar from Peterson prior to his relinquishment of ownership rights in it. However, Plaintiffs maintained that because of the licensure disqualification provisions of Ordinance No. 96 (section 8, subdivision 5), Yates would be disqualified from licensure by virtue of his gross misdemeanor domestic assault conviction of September 2, 2002.

Plaintiffs filed this action on December 31, 2003, asserting that Ordinance No. 96 is facially unconstitutional and unconstitutional as applied to Plaintiffs. Plaintiffs concurrently brought a Motion for a Temporary Restraining Order and Permanent Injunction. In their Motion, Plaintiffs asserted that: (1) the disqualification provisions of Ordinance No. 96 violate the First Amendment of the United States Constitution; (2) Ordinance No. 96 violates Minnesota Statutes § 364; (3) Ordinance No. 96, read in conjunction with Minnesota Statute § 364, gives the City unfettered discretion as to whether to issue a license; (4) Ordinance No. 96, read in conjunction with Minnesota Statute § 364, does not provide adequate procedural due process because it does not provide for prompt judicial review of the City's denial of a license application; (5) the $3,500 license fee violates the First Amendment; and (6) the prohibition on tipping and the buffer zone requirements violate the First Amendment.

On January 8, 2003, this Court heard oral argument on the Plaintiffs' Motion for Permanent Injunction and Temporary Restraining Order. That evening, the Cosmos City Council enacted

---

[1](...continued)
Restraining Order on January 8, 2004, the parties represented that the Juice Bar was initially closed on January 1, 2004, and reopened on January 8, 2004. However, at oral argument for the present motion, the parties stated that the Juice Bar closed on January 1, 2004, and has remained closed since.

Ordinance No. 97, which directly amended three portions of Ordinance 96. Ordinance No. 97 provides as follows:

> **Section 1**. Section 7 of Ordinance No. 96 is amended to read as follows:
>
> **Section 7. License Required.** <u>On or after February 1, 2004, N</u>no person or entity shall own, lease, rent, manage, or operate an Adult Oriented Business, including any Adult Oriented Business operating at the time this Ordinance becomes effective, unless such person is currently licensed under this Ordinance. Any person or entity is in violation of this Ordinance if the person or entity operates an Adult Oriented Business without a valid license, issued by the City Council ("Issuing Authority").
>
> **Section 2.** Section 6, subdivision 7(c) of Ordinance No. 96 is amended as follows:
>
> **Section 6. Operation.**
>
> **Sudivision** [sic] **7.** <u>Additional Conditions for Adult Cabarets.</u> The following additional conditions apply to adult cabarets:
>
> c) No dancer or performer shall perform any dance or live entertainment closer than ~~10~~ <u>three</u> feet measured in a direct line to a patron.
>
> **Section 3.** Section 8, subdivision 5(d) of Ordinance No. 96 is amended as follows:
>
> **Subdivision 5.** <u>Disqualifications.</u> The City will issue a license to an applicant within 30 days of the application unless one or more of the following conditions exist:
>
> (d) The applicant has been convicted of a <u>misdemeanor,</u> gross misdemeanor, or felony<u>, if such conviction</u> ~~or of violating any law of this state or local~~ ordinance relat<u>es</u>~~ing~~ to sex offenses, obscenity offenses, or adult oriented businesses;
>
> **Section 4.** This Ordinance shall be effective upon its publication.

(Emphasis in original.)

In its Order dated January 13, 2004, this Court denied Plaintiffs' Motion for Preliminary Injunction and Temporary Restraining Order. As to the licensing issues raised by Plaintiffs, the Court found that: (1) the licensing issues raised by Plaintiffs related to Yates were moot because the licensing qualifications did not apply to Yates's domestic assault conviction; (2) Peterson had no claim for prospective injunctive relief because he had agreed to divest himself of any interest in the Juice Bar as part of his plea negotiations, not as a result of Ordinance No. 96 or Ordinance No. 97; (3) Peterson could still attempt to assert an action for damages against the City for the time between January 1, 2004, and January 8, 2004, when the Juice Bar was closed; and (4) Peterson, Wise, and Yates had no standing to challenge the license fee. As a result, the Court determined that Plaintiffs had not demonstrated a likelihood of success on their claims related to the licensing provisions of Ordinance Nos. 96 and 97. In addition, the Court determined that Plaintiffs were unlikely to prevail on their claims regarding the hours of operation, gratuity, and buffer zone restrictions of Ordinance Nos. 96 and 97. The Court found that: (1) based on the Plaintiffs' briefing, the Court was left merely to speculate that the hours restriction did not allow the Juice Bar a "reasonable opportunity to open and operate" (*see* January 13, 2004, Order at 10 (quoting *Jake's, Ltd., Inc. v. City of Coates*, 284 F.3d 884, 891 (8th Cir. 2002)); and (2) Plaintiffs were unlikely to succeed on the merits of their claims regarding the gratuity and buffer zone restrictions as set forth in Ordinance Nos. 96 and 97.

On January 26, 2004, Plaintiffs filed a Second Amended and Supplemental Complaint. The Second Amended and Supplemental Complaint included a copy of a Purchase Agreement, dated December 30, 2003, signed by Dale Peterson and Brooke Wise (the "Purchase Agreement").

(Second Amended and Supplemental Complaint at Ex. D.)[2] The Purchase Agreement specified a sale price of $350,000 for the Juice Bar, but such sale was "contingent upon obtaining judicial relief to enjoin the enforcement of the Cosmos ordinance licensing adult entertainment and setting forth behavioral restrictions thereon." (*Id.* at 3.) According to the Second Amended and Supplemental Complaint, Wise and Yates cancelled the purchase agreement when this Court denied Plaintiffs' Motion for Preliminary Injunction and Temporary Restraining Order. As a result, Peterson asserts that he is entitled to $350,000 in damages from the City.

The City brought this Motion for Summary Judgment, asserting that Ordinance No. 96 is valid under the First Amendment, and thus that Plaintiffs' claims should be dismissed in their entirety. Plaintiffs, on the other hand, contend that: (1) there is an inadequate factual predicate for the City's ordinance; (2) the behavioral restrictions set forth in the ordinance fail to meet the legal standards set forth in Justice Kennedy's concurring opinion in *City of Los Angeles v. Alameda Books, Inc.*; and (3) their claim for damages is not obviated by the zoning provisions of the ordinance.

## Discussion

**I.  Standard of Review**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). The court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *See Enter. Bank v. Magna Bank of Missouri*, 92 F.3d 743, 747 (8th Cir.

---

[2]  The Purchase Agreement was not provided to the Court at the time of Plaintiffs' Motion for Preliminary Injunction and Temporary Restraining Order in January 2004.

1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record which create a genuine issue for trial. *See Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Krenik*, 47 F.3d at 957.

**II.    Constitutionality of Ordinance Nos. 96 and 97**

  **A.    Licensing Requirements**

Ordinance No. 96, as modified by Ordinance 97, disqualifies from licensure applicants who have been convicted of crimes related to sex offenses, obscenity offenses, or adult-oriented business offenses. The City asserts that the Plaintiffs have no standing to challenge the licensing requirements of Ordinance Nos. 96 and 97. It appears that Plaintiffs do not dispute the City's contentions regarding the licensing requirements of Ordinance Nos. 96 and 97, as no mention of these provisions are made in Plaintiffs' responsive briefing.

To reiterate the Court's determinations at the preliminary injunction stage of the proceedings, the Court finds that Plaintiffs do not have standing to challenge the licensing requirements of Ordinance

No. 96, as modified by Ordinance No. 97, insofar as the ordinances disqualify an applicant based on a conviction for certain crimes. First, as noted in the Court's January 13, 2004, Order, Yates' conviction for domestic assault clearly does not disqualify him from obtaining a license under the ordinance. Moreover, according to Plaintiffs, Yates and Wise have now exercised their option to cancel the Purchase Agreement. (*See* Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment at 6.) Thus, the Court could only speculate as to whether the licensing fee would ever apply to them. Second, as part of a plea bargain on his prostitution-related charges, Peterson agreed to divest himself of any interest in the Juice Bar prior to the effective date of the licensing provisions. Thus, Peterson cannot operate the Juice Bar as a result of the plea bargain, not as a result of the enforcement of Ordinance Nos. 96 and 97. Because the disqualification provisions will not apply to Peterson, Peterson has no standing to challenge these provisions.

## B.   Constitutionality of the Ordinances

"Nude dancing is expressive conduct protected by the First Amendment, 'though . . . only marginally so.'" *Jake's, Ltd., Inc. v. City of Coates*, 284 F.3d 884, 886 (8th Cir. 2002) (quoting *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 565-66 (1991)). A regulation that restricts the manner in which a sexually-oriented business may provide nude dancing for its customers is permissible under the First Amendment, provided that the ordinance is (1) content-neutral; (2) designed to promote a substantial government interest; and (3) allows for reasonable alternate avenues of communication. *Jake's*, 284 F.3d at 886 (citing *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 48-50 (1986)).

The Court finds that the purpose of the Cosmos ordinance was to lessen the undesirable secondary effects of adult businesses, and thus that it meets the first prong of *Renton*. *See ILQ Investments, Inc. v. City of Rochester*, 25 F.3d 1413, 1416 (8th Cir. 1994) (finding that even if an ordinance regulates only sexually-oriented businesses, it is content-neutral "if its purpose is to lessen undesirable secondary effects attributable to those businesses"). Plaintiffs contend, however, that the Cosmos ordinance does not meet the second prong of the *Renton* test because the City had an inadequate factual basis to justify that its ordinance furthered a substantial government interest. Plaintiffs also assert that the gratuity, buffer zone, and hours of operation restrictions in the Cosmos ordinance render the ordinance unconstitutional.

In *Renton*, the Supreme Court held that the First Amendment does not require a city, in enacting a zoning ordinance that targets adult-oriented businesses, "to conduct new studies or produce evidence independent of that already generated by other cities, so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem the city addresses." *Renton*, 475 U.S. at 51-52. Here, the Cosmos City Attorney researched and reviewed sample ordinances provided by the League of Minnesota Cities and used these to draft Ordinance No. 91. (City's Answers to Plaintiffs' First set of Interrogs., No. 2.) The City Clerk then consulted with the City Attorney and presented the sample ordinances to the City Council. (Affidavit of Kathy L. Blackwell at ¶ 4.) The City Council discussed whether they could minimize costs and rely on studies conducted in other communities regarding the effects of adult businesses, or if they needed to conduct their own studies. (*Id.* at ¶ 5.) The City Council also discussed whether the potential negative effects that had occurred in larger cities could occur in a city the size of Cosmos. (*Id.*) Finally, the City Clerk spoke to the Mayor

13

and another council member about comments from citizens that the City Clerk had received regarding the issue of decreased property values as a result of adult-oriented businesses. (*Id.* at ¶ 6.)

The Court finds that based on this information and on the stated purposes in the City's adult-oriented business ordinances, the City has established a valid evidentiary record to support the enactment of its ordinances applying to adult-oriented businesses. Ordinance No. 96 identifies a variety of potential secondary effects of adult businesses and cites a variety of studies that support those findings.[3] The fact that the City did not employ its own studies or that the City may have duplicated the language of other cities' ordinances does not render the ordinance invalid.[4]

Furthermore, the Court finds that the gratuity and buffer zone restrictions do not violate the First Amendment. In *Jake's, Ltd, Inc. v. City of Coates*, the Eighth Circuit upheld an ordinance requiring that live exotic dancing be conducted on a platform at least two feet from the floor and located no less than six feet from a patron, and prohibiting the solicitation or offering of gratuities. 284 F.3d 884, 891 (8th Cir. 2002). The Eighth Circuit concluded that these restrictions "reasonably furthered the government interest in preventing crime" and specifically, would reduce the opportunity for prostitution and narcotics transactions. *Id.* (quoting *Kev, Inc. v. Kitsap County*, 793 F.2d 1053, 1061 (9th Cir.

---

[3] Although the Court may find questionable the City's finding regarding the transmission of AIDS as a secondary effect of adult-oriented businesses, the other bases for the City's enactment of Ordinance No. 96 are sufficient for the Court to find that the ordinance was designed to counteract adverse secondary effects and thus that it serves a substantial government interest.

[4] Moreover, the Court finds that Justice Kennedy's concurring opinion in the United States Supreme Court's decision in *Alameda Books* did not alter the evidentiary burden placed on a City for enacting an adult use ordinance. *See SOB, Inc. v. County of Benton*, 317 F.3d 856, 863-64 (8th Cir. 2003).

1986)).  The ordinance at issue here similarly restricts gratuities and offers a less restrictive three-foot buffer zone.  These aspects of the ordinance are constitutionally valid pursuant to *Jake's*.

The hours of operation restriction raises a more difficult question.  On one hand, the City has not provided the Court with any case wherein a court upheld a similarly restrictive provision.  Nor has the City provided the Court with any evidence as to how the restricted hours of operation serve a substantial government interest or whether it is narrowly tailored to that end.  *See, e.g., Lady J. Lingerie, Inc. v. City of Jacksonville*, 176 F.3d 1358, 1365 (11th Cir. 1999) (citing *Ward v. Rock Against Racism*, 491 U.S. 781, 800 (1989)).  On the other hand, the affidavits provided by the Plaintiffs in opposition to the City's Motion for Summary Judgment do not provide the Court with much more than speculation as to how the hours of operation will restrict the operation of the Juice Bar.  However, considering the inferences raised in Plaintiffs' supporting affidavits, the Court finds that Plaintiffs have raised a genuine issue of material fact as to whether the hours of operation restriction passes constitutional muster.  Thus, the City's Motion for Summary Judgment is denied in this regard.

### C. Minn. Stat. § 462.357

In their response briefing to the City's Motion for Summary Judgment, Plaintiffs for the first time raise an issue regarding Minn. Stat. § 462.357, subd. 4, as it relates to proposed zoning ordinance amendments being referred to the Planning Commission for consideration prior to adoption.  The Court finds that because Plaintiffs are only challenging the licensing provisions of the ordinance, and not the zoning or location provisions, and because the Plaintiffs have only raised this issue in their response memorandum, the Court declines to consider this issue.

### Conclusion

Because the Court has determined that the constitutionality of the City's adult-use ordinance regarding hours of operation remains in question, the issue of Plaintiffs' potential damages remains. The Court cannot contemplate a situation where Plaintiffs would be permitted to recover the measure of damages they have asserted. Plaintiffs have provided no evidence as to a market evaluation of the Juice Bar, leaving the Court to only speculate as to what the value could have been prior to, and after, the enactment of Ordinance No. 96. Plaintiffs also would face a difficult task in attributing any decline in value specifically to the ordinance's constitutionally questionable hours of operation provision and segregating that decline in value from the provisions of the ordinance that the Court has found constitutional.

In light of the very speculative nature of such damages and the very narrow issue that remains, the Court believes it is in the best interests of the parties to negotiate a resolution of this dispute among themselves. As the parties are already aware, Magistrate Judge Susan Richard Nelson is available to assist in the negotiation of a settlement, should the parties find such services helpful. If the Court may be of assistance in this matter, the parties should contact Lowell Lindquist, Calendar Clerk for the undersigned, at 651-848-1296, or Beverly Riches, Calendar Clerk for Magistrate Judge Susan Richard Nelson, at 651-848-1200.

For the reasons stated, **IT IS HEREBY ORDERED:**

1. Defendant The City of Cosmos's Motion for Summary Judgment [Doc. No. 20] is **GRANTED IN PART** and **DENIED IN PART**, as follows:

   a. The Court finds that the Plaintiffs lack standing to challenge the licensing requirements of Ordinance Nos. 96 and 97.

   b.  The Court finds that the gratuity and buffer zone provisions of Ordinance Nos. 96 and 97 are constitutionally valid.  Defendant's Motion is **GRANTED** in this regard; and

   c.  Insofar as Defendant's Motion raises issues related to the hours of operation restriction of Ordinance No. 96, Defendant's Motion is **DENIED.**

Dated: May 27, 2005     <u>s/Donovan W. Frank</u>
             DONOVAN W. FRANK
             Judge of United States District Court